FILED
CLERK, U.S. DISTRICT COURT
MAY 30 2008
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

ROBB W. BIEWENER, ) No. CV 07-1907-PLA
)
        Plaintiff, )
) **MEMORANDUM OPINION AND ORDER**
     v. )
)
MICHAEL J. ASTRUE, )
COMMISSIONER OF SOCIAL )
SECURITY ADMINISTRATION, )
)
        Defendants. )
_____)

I.

**PROCEEDINGS**

    Plaintiff filed this action on March 30, 2007, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income. The parties filed Consents to proceed before the undersigned Magistrate Judge on April 20, 2007, and July 17, 2007. Pursuant to the Court's Order, the parties filed a Joint Stipulation on January 29, 2008, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on August 29, 1956. [Administrative Record ("AR") at 93, 287.] He obtained a G.E.D. (general educational development) certificate, and completed vocational training as a mold maker. [AR at 104, 118.] Plaintiff has past relevant work experience as a plastics mold maker and as a supervisor. [AR at 113, 125-32.]

On June 19, 2000, plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income payments.[1] [AR at 93-95, 96, 287-88, 289.] Plaintiff alleged that he has been unable to work since August 3, 1995, due to severe depression, mood swings, and sleep problems. [AR at 93, 100, 112, 287.] After his applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held before ALJ Charles E. Stevenson on April 11, 2002, at which time plaintiff appeared with counsel and testified on his own behalf. [AR at 29-62.] A vocational expert and a lay witness also testified. [AR at 50-61.] On May 31, 2002, the ALJ determined that plaintiff was not disabled. [AR at 10-12, 13-18.]

Plaintiff requested review of the ALJ's decision on June 6, 2002. [AR at 7-8, 9.] On July 19, 2002, the Appeals Council denied review [AR at 5-6], and plaintiff filed an action in District Court, in Case No. ED CV 02-974-PLA, challenging the Commissioner's decision. On June 6, 2003, judgment was entered remanding the case for further proceedings pursuant to the parties stipulation for remand under sentence four of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). [AR at 529-30, 532-34.] On August 27, 2003, the Appeals Council vacated the final decision of the Commissioner, and remanded the case to an ALJ. [AR at 536-38.] A new hearing was held on November 25, 2003, at which time plaintiff appeared with counsel and testified on his own behalf. [AR at 361-91.] A vocational expert and a lay witness also testified. [AR at 372-90.]

---

[1] Plaintiff previously filed an application for Disability Insurance Benefits on August 19, 1998, which was denied on June 8, 1999. [AR at 68-71, 90-92, 297.] Plaintiff took no further action on that application, rendering the decision by the Social Security Administration final. [AR at 297.]

On January 30, 2004, ALJ Helen Hesse concluded that plaintiff was not disabled.[2] [AR at 293-95, 296-304.]

Plaintiff then filed another action in this Court challenging the Commissioner's decision. On August 15, 2005, in Case No. ED CV 04-460-PLA, the Court remanded the matter back to the Commissioner "to comply with the Order of the Appeals Council to fully evaluate the opinions of plaintiff's treating physicians, including Dr. Hougen." [AR at 604-17.] On December 1, 2005, the Appeals Council vacated the January 30, 2004, ALJ decision, and remanded the case for further proceedings consistent with the Court's Order of August 15, 2005. [AR at 618-19.] Another hearing was held on November 13, 2006, before ALJ Hesse, at which time plaintiff again appeared with counsel and testified on his own behalf. [AR at 670-701.] A vocational expert and a medical expert also testified. [Id.] On January 17, 2007, the ALJ once again determined that plaintiff was not disabled. [AR at 561-63, 564-72.] This action followed.[3]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

---

[2] Plaintiff protectively filed a new application for Supplemental Security Income payments on June 25, 2002, for which a hearing was held before ALJ Daniel Heely on July 10, 2003. [AR at 326-60, 418, 419-21.] Plaintiff appeared at this hearing with counsel and testified on his own behalf. [AR at 326-60.] A lay witness also testified at the hearing. [Id.] On September 22, 2003, the ALJ determined that plaintiff was not disabled. [AR at 312-14, 315-24.] No further action was taken on that application.

[3] On July 11, 2007, the parties stipulated to voluntary remand of the case pursuant to sentence six of 42 U.S.C. § 405(g), because the Commissioner was unable to locate the cassette tape of the hearing of November 13, 2006, and was, therefore, unable to prepare a certified record. Accordingly, the Court remanded the case for further administrative proceedings. Thereafter, the parties filed a stipulation to reopen the case, and on September 6, 2007, the Court ordered the case reopened.

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or

1  equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of the disability.[4] [AR at 565, 571.] At step two, the ALJ concluded that plaintiff has the following "severe" impairments: mood disorder, not otherwise specified ("NOS"), and personality disorder, NOS, with impulse control problems. [AR at 569, 571.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the following residual functional capacity ("RFC")[5]: "he can perform moderately complex tasks, up to 4-5 step instructions, in a habituated work setting, where no hypervigilence is required, he is not in charge of safety operations of others, there are no intense interpersonal interactions, and no emotionally

---

[4]  The ALJ also determined that "[t]he claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through December 31, 2000." [AR at 571.]

[5]  RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

charged interactions. There are no exertional limitations."[6] [AR at 570, 571.] At step four, the ALJ concluded that plaintiff was not capable of performing his past relevant work. [Id.] At step five, the ALJ found, based on the vocational expert's testimony and application of Medical-Vocational Rule 204.00 as a framework, that there are a significant number of jobs in the national economy that plaintiff is capable of performing. [AR at 570-72.] Accordingly, the ALJ determined that plaintiff is not disabled. [AR at 571-72.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to: (1) comply with the District Court Order and the Appeals Council's Order that required the ALJ to properly consider Dr. Timothy E. Hougen's dysfunction rating of severe; (2) properly consider the evaluation of Dr. Maria T. Salanga; and (3) pose a complete hypothetical question to the vocational expert. Joint Stipulation ("Joint Stip.") at 3. The Court respectfully disagrees with plaintiff, and affirms the ALJ's decision.

**A.   COMPLIANCE WITH THE DISTRICT COURT ORDER AND THE ORDER OF THE APPEALS COUNCIL**

Plaintiff argues that the ALJ failed to comply "with the District Court Order and Order of Appeals Council by not addressing Dr. Hougen's opinion that [p]laintiff has a severe dysfunction rating." Joint Stip. at 5. Defendant asserts that "[t]he ALJ fully complied with the District Court's and Appeals Council's remand orders by providing proper reasons for discounting Dr. Hougen's unsupported opinion." Id. Specifically, defendant contends that the ALJ discussed Dr. Hougen's treatment records, and concluded that the Global Assessment of Functioning ("GAF") score of 32[7]

---

[6]   The ALJ noted that plaintiff "has the residual functional capacity to perform a significant range of heavy work." [AR at 572.]

[7]   A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental

was inconsistent with the "relatively normal mental status examination" performed by Dr. Hougen, and that the severe dysfunction rating found by Dr. Hougen was inconsistent with other medical evidence in the record.[8]   Joint Stip. at 6.

As discussed supra, plaintiff filed an action in this Court, in Case. No. ED CV 02-974-PLA, challenging the May 31, 2002, ALJ decision of nondisability. Pursuant to a stipulation remanding the matter, the Appeals Council vacated the ALJ's decision of May 31, 2002, and remanded the case for further proceedings. [AR at 10-12, 13-18, 532-38.] The Order of the Appeals Council required that, among other things, the ALJ ensure that "[m]edical opinions and medical source statements from treating sources, examining sources, and nonexamining sources are fully evaluated, weighed and if appropriate, accepted or rejected." [AR at 537.] When the ALJ on January 30, 2004, again determined that plaintiff was not disabled, plaintiff filed another action in this Court, in Case No. ED CV 04-460-PLA. [AR at 293-304.] The Court on August 15, 2005, remanded the action to the Commissioner for further proceedings to allow the ALJ "to comply with the Order of the Appeals Council to fully evaluate the opinions of plaintiff's treating physicians, including Dr. Hougen."[9]  [AR at 604-17.] On January 17, 2007, the ALJ once again determined that plaintiff was not disabled. [AR at 561-63, 564-72.] The ALJ's decision of January 17, 2007, is at issue in this case.

---

Disorders ("DSM-IV"), at 32 (4th Ed. 2000). A GAF score of 31-40 denotes "some impairment in reality testing or communication . . . or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. . ." DSM-IV, at 34.

[8] Defendant's argument that the ALJ "provided a discussion of other treating and examining sources' conclusions, showing that Dr. Hougen's severe dysfunction rating was inconsistent with other evidence of record" is inaccurate. Joint Stip. at 6. Although the ALJ discussed the conclusions of several medical sources in the decision, there is no indication that the ALJ found Dr. Hougen's severe dysfunction rating inconsistent with "the other evidence of record." In fact, as set forth infra, the ALJ appears to implicitly adopt Dr. Hougen's severe dysfunction rating within the decision. As such, despite defendant's argument in the Joint Stipulation, remand is still not appropriate.

[9] The Appeals Council vacated the ALJ's decision of January 30, 2004, and remanded "the case . . . for further proceedings consistent with the order of the court." [AR at 619.]

In the Clinical Assessment form completed by Dr. Hougen on August 13, 1998 [AR at 246-52], Dr. Hougen assessed plaintiff with a "severe" dysfunction rating, and noted that plaintiff's "severe interpersonal difficulties (e.g., w/ ex-wife, g.f.)" supported the severe dysfunction rating. [AR at 249, 508.] Dr. Hougen also assessed plaintiff with a GAF score of 32. Plaintiff does not argue in the Joint Stipulation that the ALJ improperly rejected the GAF score of 32 assigned by Dr. Hougen.[10] Joint Stip. at 3-6. However, as noted, plaintiff argues that the ALJ failed to discuss the severe dysfunction rating assessed by Dr. Hougen. Joint Stip. at 5.

In the most recent decision, the ALJ discussed the Clinical Assessment form completed by Dr. Hougen, and noted Dr. Hougen's opinion that plaintiff "was having severe interpersonal difficulties with his ex-wife." [AR at 566.] The ALJ also noted the GAF score of 32 assigned to plaintiff by Dr. Hougen. [Id.] The ALJ found the GAF score of 32 "inconsistent with the relatively normal mental status examination and reject[ed] it accordingly." [AR at 566.] The ALJ further found that plaintiff had a residual functional capacity "to perform work with the following limitations: he can perform moderately complex tasks, up to 4-5 step instructions, in a habituated work setting, where no hypervigilence is required, he is not in charge of safety operations of others, *there are no intense interpersonal interactions, and no emotionally charged interactions.* There are no exertional limitations." [AR at 570] (emphasis added).

It is true that the ALJ did not explicitly reject or accept Dr. Hougen's severe dysfunction rating in her discussion of Dr. Hougen's findings in the decision. However, even though the ALJ did not expressly state whether she was rejecting or accepting the severe dysfunction rating found by Dr. Hougen, or discuss the weight she was giving that specific finding, the ALJ's substantial

---

[10] Given plaintiff's apparent concession in this regard, the Court need not address the ALJ's rejection of the GAF score of 32 in detail. In any event, the ALJ provided a sufficiently specific and legitimate reason -- the GAF score of 32 was not consistent with plaintiff's relatively normal mental status examination -- for his rejection of the GAF score of 32 assigned to plaintiff by Dr. Hougen. See Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (the ALJ properly discounted the opinion of a treating physician, in part, because his conclusions were not supported by his own notes and "had multiple inconsistencies with all other evaluations"); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (the ALJ need not accept a treating physician's opinion which is "conclusory and unsubstantiated by relevant medical documentation").

inclusion of the behavior supporting the severe dysfunction rating -- severe interpersonal difficulties -- in her determination of plaintiff's residual functional capacity and in the hypothetical question posed to the vocational expert is sufficient to show her acceptance of Dr. Hougen's finding of a severe dysfunction rating. [AR at 249, 508, 570, 699-700.] Specifically, the ALJ included the restriction of "no intense interpersonal interactions" in plaintiff's residual functional capacity, and precluded "intense interpersonal interactions" in the hypothetical question posed to the vocational expert. [AR at 570-71, 700.] Consequently, while the ALJ did not formally accept or reject Dr. Hougen's severe dysfunction rating when addressing the relevant medical evidence, and did not give specific reasons for the weight given to Dr. Hougen's severe dysfunction rating, the limitation was nonetheless taken into account when the ALJ made her ultimate disability determination. [Id.] Therefore, since the ALJ's failure to explicitly mention the weight she gave to the severe dysfunction rating did not affect the final decision, any error was harmless. See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (an error is harmless if the mistake is "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion") (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

The ALJ properly considered Dr. Hougen's opinion on remand in compliance with the District Court's Order, as well as the Order of the Appeals Council. Accordingly, remand is not warranted.

### B.   EVALUATION OF DR. SALANGA

Plaintiff next argues that the ALJ did not provide specific and legitimate reasons for rejecting the opinion of Dr. Maria T. Salanga. Joint Stip. at 8. Specifically, plaintiff asserts that the ALJ improperly rejected Dr. Salanga's findings that plaintiff suffered from various marked and extreme limitations. Joint Stip. at 9. Defendant contends that substantial evidence supports the ALJ's rejection of Dr. Salanga's unsupported opinion. Id.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine

nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; Lester, 81 F.3d at 830. Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)). Although the treating physician's opinion is entitled to great deference, it is not necessarily conclusive as to the question of disability. Magallanes, 881 F.2d at 751 (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989)). Where the treating physician's opinion is uncontradicted, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. Where the treating physician's opinion is contradicted, the ALJ may reject it in favor of a conflicting opinion of an examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Ramirez v. Shalala, 8 F.3d 1449, 1453-54 (9th Cir. 1993). Specific and legitimate reasons can be set forth by a "detailed and thorough summary of the facts and conflicting clinical evidence, stating [the ALJ's] interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citing Magallanes, 881 F.2d at 725).

On January 4, 2001, Dr. Salanga completed a Work Capacity Evaluation (Mental) form. [AR at 254-55.] Dr. Salanga assessed plaintiff as markedly impaired in his ability to, among other things, remember locations and work-like procedures, understand and remember very short and simple instructions, sustain an ordinary routine without special supervision, make simple work-related decisions, and ask simple questions or request assistance. [AR at 254-55.] Dr. Salanga found plaintiff extremely limited in his ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, work in coordination with or in proximity to others without being distracted by them, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. [AR at 254-55.] Dr. Salanga concluded

that plaintiff's "impairment lasted or can be expected to last at least 12 months," and that plaintiff's impairments or treatment would cause plaintiff to be absent from work three or more days per month. [AR at 255.]

In the decision, the ALJ gave Dr. Salanga's 2001 assessment of marked and extreme limitations in all areas of functioning little weight for the following reasons: (1) it is "unpersuasive . . . as it is unsupported by objective medical findings"; (2) "there is no indication a mental status exam was performed" in connection with Dr. Salanga's evaluation concerning plaintiff's ability to do work-related activities; and (3) "this assessment is inconsistent with Dr. Salanga's earlier notes which indicated significant improvement." [AR at 567.] Plaintiff contends that the reasons cited by the ALJ are inadequate. As discussed below, the Court disagrees with plaintiff.

The lack of objective medical findings and the absence of a mental status examination to support Dr. Salanga's opinion regarding plaintiff's work capacity are specific, legitimate reasons supported by the record for the ALJ to discount Dr. Salanga's 2001 assessment.[11] Plaintiff does not cite to any objective basis for Dr. Salanga's assessment of marked and extreme limitations, nor can the Court find any such basis in the record. A treating physician's opinion is not conclusive as to either functional limitations or the ultimate issue of disability. See Andrews, 53 F.3d at 1041. The proper weight that an ALJ should give to a treating physician's opinion depends on whether sufficient data supports the opinion and whether the opinion comports with other evidence in the record. See 20 C.F.R. §§ 404.1527, 416.927. The Ninth Circuit permits an ALJ to rely on an absence of objective findings to reject a treating physician's opinion. Johnson, 60 F.3d at 1432 (inadequate clinical findings provide specific and legitimate basis for ALJ to reject treating physician's opinion). Moreover, Dr. Salanga's 2001 assessment merely consisted of a check-the-box form without any supporting objective medical evidence. Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (a psychological evaluation can be rejected if it is in the form of a check-

---

[11] Even though Dr. Salanga performed an evaluation of plaintiff in August 2000, which included plaintiff's mental status and level of functioning at that time, as discussed below, Dr. Salanga noted "significant improvement" in that evaluation. [AR at 208-11, 567.] The earlier evaluation does not support Dr. Salanga's later evaluation, i.e., it does not support Dr. Salanga's findings of marked and extreme limitations.

11

off report that does not contain any explanation or lacks objective and clinical support). As the ALJ need not accept a treating physician's opinion that is "brief and conclusionary in form with little in the way of clinical findings to support [its] conclusions," plaintiff has not shown that the ALJ erred in rejecting Dr. Salanga's assessment of plaintiff's limitations. Magallanes, 881 F.2d at 751 (quoting Young v. Heckler, 803 F.2d 963, 968 (9th Cir.1986)); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) (ALJ may reject the conclusory opinion of an examining or treating physician if the opinion is unsupported by clinical findings).

The ALJ also discounted Dr. Salanga's assessment because it was inconsistent with earlier notes prepared by Dr. Salanga indicating that plaintiff's condition was improving. Generally, the more consistent a medical opinion is with the record as a whole, the more weight it will be given. 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4) (internal inconsistencies in the evidence can impact on weight given to that evidence); see Morgan v. Commissioner of Social Security Admin., 169 F.3d 595, 603 (9th Cir. 1999) (internal inconsistencies between one doctor's report and another medical report constitutes relevant evidence). In an Evaluation Form for Mental Disorders dated August 11, 2000, Dr. Salanga noted that plaintiff's mood was pleasant, his affect was appropriate, and his depressive symptoms were reduced. [AR at 208-11.] Plaintiff reported no auditory or visual hallucinations, and no paranoid delusions. [AR at 209.] Dr. Salanga further noted that plaintiff's ability to complete tasks and his concentration had improved with medication and psychotherapy. [AR at 210.] Although Dr. Salanga diagnosed plaintiff with "bi-polar I disorder, most recent episode manic, moderate," and assessed plaintiff with a GAF score of 38,[12] Dr. Salanga noted that plaintiff's prognosis was good. [Id.] Specifically, Dr. Salanga indicated that plaintiff "is responding well to the medication" and "continues to improve with medication and therapy." [AR at 210.] Moreover, there are no records of an examination between the August, 2000, Evaluation Form and the January, 2001, Work Capacity Evaluation showing that plaintiff's condition was worsening. Accordingly, the ALJ properly discounted Dr. Salanga's 2001 findings that plaintiff suffered from marked and extreme limitations as those findings were inconsistent with

---

[12] See supra, fn. 7.

12

the earlier evaluation of plaintiff, in which Dr. Salanga noted "significant improvement," as well as with other substantial evidence in the record.[13] See 20 C.F.R. §§ 404.15279(c), (d), 416.927(c), (d); see also Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994) (ALJ properly discounted medical opinion of treating physician because his "own office records did not support his later expressed opinion that [the] plaintiff was totally disabled"); Knight v. Chater, 55 F.3d 309, 314 (7th Cir. 1995) ("Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence.") (citation omitted).

The ALJ conducted a thorough review of the medical evidence presented, and her conclusion is entitled to deference. As discussed, the ALJ cited specific and legitimate reasons, based on substantial evidence in the record, for rejecting Dr. Salanga's 2001 assessment. Remand is not warranted on this issue.

## C. HYPOTHETICAL TO THE VOCATIONAL EXPERT

Plaintiff argues that the ALJ failed to incorporate plaintiff's severe dysfunction rating into the hypothetical question posed to the vocational expert. Joint Stip. at 10-11. Defendant contends that given that the ALJ properly rejected Dr. Hougen's findings, it was appropriate for the ALJ not

---

[13] In the decision, the ALJ noted the following specific evidence in the record: (1) progress notes from February 2001, indicated that plaintiff was stable on his medication; (2) mental health notes from September 2001, indicated that plaintiff was stable in terms of his depression; (3) Dr. Nader Oskooilar performed a psychiatric evaluation of plaintiff on October 24, 2001, and concluded, among other things, that plaintiff was able to do simple, low stress and repetitive tasks with general supervision, he could complete a normal workday without much interruption from his psychiatric condition with breaks every two hours, accept instructions from supervisors, interact with a limited number of coworkers and deal with the stressors of a concrete task, but he could not do complex and abstract tasks; (4) progress notes from February 2002, indicated that plaintiff continued to be stable on his medication; (5) a State Agency psychiatrist noted that plaintiff's condition was well controlled when plaintiff was compliant with medications and concluded that plaintiff did not have a severe mental impairment; (6) on May 6, 2006, Dr. Kim Goldman performed a psychological evaluation -- including a mental status examination and tests -- and concluded that plaintiff was able to understand, remember and carry out instructions and make judgments on work-related decisions, and that his ability to interact appropriately with the public, supervisors and coworkers, as well as his ability to respond appropriately to work pressures in a usual work situation and to changes in a routine work setting, were only slightly impaired. [AR at 256-61, 264, 272, 280, 477-78, 567-69, 653-57.]

to include any additional limitations in the hypothetical question proffered to the vocational expert.[14] Joint Stip. at 11.

An ALJ can pose hypothetical questions to the vocational expert to determine whether a claimant can engage in gainful employment. See Osenbrock v. Apfel, 240 F.3d 1157, 1162-63 (9th Cir. 2001). "A vocational expert's testimony in a disability benefits proceeding 'is valuable only to the extent that it is supported by medical evidence.'" Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (citation omitted) (where claimant's allegations of disabling pain were supported by medical evidence, and the ALJ had no clear and convincing reasons to reject such claims, pain should have formed a part of the ALJ's question to the expert). "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value. The most appropriate way to insure the validity of the hypothetical question posed to the vocational expert is to base it upon evidence appearing in the record, *whether it is disputed or not*." Id. at 1456 (emphasis added). See also Nguyen v. Chater, 100 F.3d 1462, 1466 n.3 (9th Cir. 1996) ("Because the hypothetical was incomplete, it does not constitute competent evidence to support a finding that claimant could do the jobs set forth by the vocational expert."). Hypothetical questions posed to a vocational expert must set forth all of the limitations and restrictions of a particular claimant. Andrews, 53 F.3d at 1043; Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

As noted above, the ALJ's determination of plaintiff's RFC included, among other things, "no intense interpersonal interactions." [AR at 570.] The ALJ posed the following hypothetical to the vocational expert:

> Okay, hypothetically, would you please assume a 50-year-old individual with a high school education, plus some additional college work, and work experience as outlined by yourself in your report and testimony today. This individual can perform moderately complex tasks with up to four to five step instructions in a habituated work setting not requiring hyper vigilance, he should not be [in] charge of safety operations of others. He's precluded from intense interpersonal interactions such as the kind that law enforcement or emergency medical personnel get involved with or complaint takers, he's precluded from emotionally in charge [sic] interactions and he should

---

[14] See supra, fn. 8.

> not supervisor [sic] others. Based on this hypothetical, can this individual perform any of the claimant's past relevant work?

[AR at 699-700.] In response to the ALJ's hypothetical, the vocational expert testified that the hypothetical individual could not perform plaintiff's past relevant work, but that the hypothetical individual could perform other jobs existing in the national economy, such as a packager, a furniture assembler, and a laundry worker II. [AR at 700.] As discussed above, in the Clinical Assessment form completed by Dr. Hougen, Dr. Hougen found that plaintiff suffered from a severe dysfunction rating, and cited "severe interpersonal difficulties (e.g., w/ ex-wife, g.f.)" as behavior supporting the severe dysfunction rating. [AR at 249, 508.] Given that the ALJ included the limitation of "no intense interpersonal interactions" in plaintiff's residual functional capacity and included in the hypothetical posed to the vocational expert that the individual is "precluded from intense interpersonal interactions," the ALJ properly incorporated plaintiff's severe dysfunction rating into the hypothetical question posed to the vocational expert. Accordingly, remand is not warranted.

## VI.
## CONCLUSION

**IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and 2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: May 30, 2008

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE